This is the suit of William Pike Burden, Jr., against Capitol Stores Inc., Willie Fritz, one of its employees and Massachusetts Bonding and Insurance Company, insurance carrier on its truck, for damages for personal injuries. Originally the demand was for the sum of $42,987.79 but several items were subsequently eliminated and in a supplemental petition the total amount of the demand was reduced to the sum of $33,099.79.
We find the case correctly stated in the written opinion filed by the district judge from which we take the liberty to quote as follows:
"The plaintiff, William Pike Burden, Jr., alleges that on or about the 30th day of July, 1938, he was driving a Pontiac Coach in an easterly direction on Julia Street in the City of Baton Rouge, Louisiana, at a lawful rate of speed, and on the right hand side of the street. He further alleges that when he was some distance from the intersection of St. Napoleon and Julia *West Page 63 
Streets, he saw the truck belonging to the Capitol Stores, Inc., driven by Willie Fritz, travelling north on St. Napoleon Street at a speed which he estimated to be twenty-five miles per hour.
He further represents that he saw the said Willie Fritz reduce the speed of the truck to about twenty miles per hour, and, as there was nothing to obstruct the view of a driver on St. Napoleon Street, he concluded that Fritz had seen him and was slowing down in order to permit him to cross the intersection on Julia Street, which street, he alleges had the right of way over St. Napoleon Street under an Ordinance of the City of Baton Rouge.
The plaintiff claims that he took his eyes off of the truck and looked to the north which was his left, to ascertain whether any cars were approaching the intersection travelling south on St. Napoleon Street, and seeing none continued his progress east on Julia Street, but that when he entered the intersection of Julia and St. Napoleon Streets, although the driver of the truck had reduced the speed thereof, he did not stop, but on the contrary in spite of the fact that the plaintiff was on Julia Street, which was as stated, a right of way street, and in spite of the fact that he entered the intersection first, Fritz continued his progress north on St. Napoleon Street and collided with the automobile driven by the plaintiff.
He further represents that after he entered the intersection and saw that Willie Fritz was not going to stop his truck, and just a moment before the truck driven by Fritz struck him, he pressed down on the accelerator of his car in an effort to get out of the path of the truck, but that then car which he was driving did not have a fast pick-up and therefore it was impossible for him to get out of the path of the oncoming truck.
The plaintiff claims that Willie Fritz could easily have avoided the accident by stopping the truck or by veering the same to the left and around the back of the plaintiff's car, but that the said Fritz deliberately and recklessly continued his progress, striking plaintiff's car on the rear right fender and rear right bumper; that when his automobile was struck in the rear his car veered, and in an effort to hold it in the road he continued to keep his foot on the accelerator, but that on account of the severe impact between the two vehicles, his car was skidded against the left curbing of Julia Street looking east and turned over causing him to lose control of his automobile.
Plaintiff prays for judgment against Willie Fritz, the Capitol Stores, Inc., the owner of the truck driven by Fritz and the Massachusetts Bonding and Insurance Company.
In an amended and supplemental petition he eliminated certain items of damages which he had claimed in the original petition, but further than this made no amendment thereto.
The defendants in their answer to plaintiff's petition, admit the fact of the collision on the date set out in the petition. They further admit that Willie Fritz was driving a truck belonging to the Capitol Stores, Inc., but deny that at the time of collision Willie Fritz was engaged within the scope of his employment by the Capitol Stores, Inc., and particularly that he was delivering merchandise for said corporation.
Defendants especially deny that the accident occurred in the manner set forth in the plaintiff's petition.
In the alternative, they allege that in the event it should be held that Willie Fritz, the driver of the truck was negligent and was acting within the scope of his employment, the plaintiff was guilty of negligence proximately contributing to the accident, barring his recovery for the following reasons:
(1) In operating his automobile at an approximate speed of 30 to 35 miles per hour while entering and crossing the intersection;
(2) In failing to keep his car under proper control;
(3) In not maintaining a proper lookout for automobiles or other vehicular traffic approaching the intersection of St. Napoleon Street in a northerly direction;
(4) In attempting to enter the intersection after the truck had already entered the same, and at a time when it was impossible for the driver of the truck to avoid a collision;
(5) In failing to see the approaching truck, or, if he did see the same as he should have, in failing to take proper precautions to avoid the collision;
(6) In failing to see the approaching truck, or, if he did see the same as he should have, in leaving a place of safety to attempt crossing the intersection in the *West Page 64 
face of a situation fraught with grave and imminent danger."
On the issues as presented to him, the district judge, for the reasons assigned in his written opinion, reached the conclusion that the drivers of both vehicles were guilty of negligence and judgment was accordingly rendered dismissing the plaintiff's suit. From that judgment, plaintiff has perfected and is prosecuting the present appeal.
At the outset it might be well to mention that there is no longer any dispute on the question of the purpose of the truck driver's employment on the trip he was on at the time of the accident and the liability of his employer and its insurance carrier, in case of his negligence, is no longer an issue in the case.
The only persons who claimed to have seen the accident when it happened are Mr. Burden himself, Willie Fritz, the truck driver and a negro named Jesse Tilley who was in the truck with him, a white man named Nolan Sicard and a negro woman named Mary Williams.
St. Napoleon Street runs due north and south and where it intersects Julia Street, which runs east and west, is 24 ft. 3 in. wide. Julia Street, at that point, is 23 feet wide.
Plaintiff's place of business is located at the corner of Julia Street and Highland Road, two blocks west from the corner at which the accident took place. He testified that on the morning of the accident he left his office in an automobile which, it developed during the trial, was that of his wife, and was proceeding east on Julia Street as he had some business which took him in that direction. That when he reached the first corner which evidently is the one at which the first street west of St. Napoleon intersects Julia Street, a car was crossing that intersection and he had to slow down practically to a stop and shift the gears of his car. He then proceeded on into the next block at a rate of speed of from 20 to 25 miles an hour. When he was "a little ways" in that block he looked to the south and saw the blue truck of the Capitol Stores coming north on St. Napoleon Street. At that moment the truck and his car were about the same distance from the intersection, both going at about the same speed. He continued on at the same speed and when about 40 feet from St. Napoleon Street he looked south again and saw the truck which he says was again about the same distance as he was from the intersection. To use his own expression, "the truck hesitated," that is, it did not stop but its speed was reduced in such manner that the driver "gave every indication he was going to drive up and stop." Acting on this assumption, he continued on, looked north to his left for traffic coming from that direction and when he had already entered the intersection observed that the truck had not stopped and was going to strike his car. He then pressed the accelerator on his car to the floor in an effort to speed on ahead of the truck but did not get by in time and his car was struck a blow which completely lifted it up. He states that the car he was driving did not have the same "pick-up" as his own car and did not answer as fast as his when he tried to speed ahead of the truck.
The witness Sicard testified that on that morning he was also travelling east in an automobile on Julia Street and was about a block and a half behind plaintiff's car when the collision occurred. He states that from that distance and his position, he was able to see that the Burden car entered the intersection first and that the front end of the car had already passed the front end of the truck when it was struck on its back end. He would not venture to say how far away the truck was from the intersection when he first saw it, neither would he estimate its speed although he didn't believe it was going very fast.
Willie Fritz, driver of the truck, states that he was going north on St. Napoleon Street at about 15 or 20 miles per hour and when he got near the Julia Street corner he blew the horn of his truck. He then saw the Burden car coming down "a piece" and Jesse Tilley who was in the truck with him called out, "There comes a car!" He told him he had seen it and just before it got near he had driven 4 feet into the intersection. However the car did not stop so he applied the brakes on his truck and brought it to a stop. Mr. Burden then tried to pull away from him to avoid striking the truck but the back end of his car caught the grill on the front end of the truck and pulled it loose. He further stated that he went on into the intersection because he did not think the Burden car was going to "come across" like it did.
Jesse Tilley testified that as they were about in the middle of the block before Julia Street he saw the Burden car coming and warned Fritz of its approach. This *West Page 65 
witness is the only one who estimated the speed of the Burden car as high as 45 miles per hour. Fritz blew the horn of his truck and reduced its speed to 10 or 15 miles per hour. Upon reaching the intersection he applied the brakes and the truck came to a stop 3 or 4 feet within the intersection. The car then passed ahead of it and hit the front part of the truck.
Mary Williams stated as a witness that she was walking on Julia Street and that she was about a block and a half from the corner where it happened. She heard the horn of the truck twice and on hearing it the second time she looked up and saw the truck approaching the corner. It was sounded once more as the truck entered the intersection and as it did so, "out came this automobile (the Burden car) running fast." The truck stopped and the driver of the car made an effort to get by in front of it but could not and it struck the truck.
This witness had given statements to representatives of both sides when the accident was being investigated. They were reduced to writing and signed by her. In the one she is reported to have made to plaintiff's representative she says that the truck horn sounded twice; that the truck ran into the back end of the car; that the truck could have stopped but the car could not stop at the time the truck horn was blown. In that given to the defendants' investigators she is said to have stated that the car was approaching fast and the truck was going slow; that just before the truck reached the intersection the driver blew the horn and that when he about reached the center, that the Burden car reached that point also and the collision took place. In that statement she says again that the truck struck the back end of the car. There is an apparent conflict between parts of both statements signed by her and her testimony on the witness stand and the district judge gave her testimony no consideration. We believe that this witness saw the accident from some distance east on Julia Street but no doubt she became confused regarding the details in speaking to the representatives of the respective sides and taking those parts of the statement which coincide with her testimony, the facts elicited would indicate that both vehicles reached the intersection at about the same time and that the truck driver had sounded his horn, and that the car was going faster than the truck.
All told therefore there is a sharp conflict in the testimony of the eye witnesses on the vital point in the case which is the one regarding pre-emption of the intersection by either of the two vehicles, and with that conflict in mind we come now to consider the physical facts found in the record. These may be said to appear entirely from the testimony of Anthony S. Longo of the Baton Rouge Traffic Police Force who investigated the accident and arrived at the scene very shortly after it happened.
His report shows that the collision took place 3 feet southeast of the manhole which is right in the center of the intersection and about 10 to 12 feet north of a line between the two corners on the south end of the intersection. The distance from a line between the west corners of the intersection is not given but as St. Napoleon Street is shown to be 24 ft. 3 in. wide, it follows that it must have been between 12 and 13 feet. After the impact, as shown by the officer's report, the Burden car went 46 ft. 6 in. in a northeasterly direction, struck the curve on the north side of Julia Street, continued on 24 ft. more after which it upset and travelled 14 ft. on its top. The truck continued on St. Napoleon Street and stopped about 30 feet from the point of the collision.
Photographs offered in evidence show the damage to the truck to have been to the grill and front of the radiator, the front bumper and the right front fender. The car was damaged on the right rear fender and the rear bumper to the right. The windshield and window glasses were broken and the top was also damaged but all of this, no doubt, from the rolling over of the car after the accident.
We are of the opinion that the physical facts tend to support the contention of the defendants that both vehicles reached the intersection at almost the same moment and from the testimony of the respective drivers it seems as though each expected the other to stop or retard his speed to let the other proceed across. It is true that Mr. Sicard's testimony corroborates that of Mr. Burden to the effect that his car entered the intersection first, but in view of this witness's position, he being in his car a block and a half distant and especially as he was following the Burden car, it is highly improbable that he saw exactly what he says he did. He could well have seen *West Page 66 
the front end of the truck cross the line between the south corners but we doubt very much that he could have seen the front end of the Burden car cross the line between the west corners of the intersecting streets. In an unguarded moment Mr. Sicard said that the reason he knew the Burden car had entered first was because its back end was torn up. He later changed his testimony in this respect but most probably that was the basis on which he had drawn his conclusion.
We believe that the testimony as a whole shows that the car was moving faster than the truck as they both approached the intersection. Mr. Burden says that they were going at about the same speed when they were both 40 feet away. He then states however that the truck slowed down and evidently that is what gave him such strong "indication" as he expressed it, that the driver would stop and let him go on. Assuming that to be the fact we have the truck going at a slower rate of speed at least when 40 feet from the intersection than was the car when it was that same distance away and it would then seem physically impossible for the collision to have occurred as the car would necessarily have travelled more than 2 or 3 feet in the intersection than did the truck. Moreover, Mr. Burden states that when he was in the intersection he observed that the truck would not stop so he accelerated his speed. That being so he should then have cleared the intersection ahead of the truck unless he misjudged the distance it was from him at the moment.
Mr. Burden no doubt relied to a great extent on the right of way he considered he had under the City Ordinance of the City of Baton Rouge which gives the streets running east and west a superior right over those running north and south. In view of Rule 20, section 3 Title 2 of Act 286 of 1938, the State Highway Regulatory Act, which limits the power of local authorities to enact or enforce any rule or regulation contrary to its provisions, one of which gives the right of way at intersections to the driver of the vehicle approaching from the right, we are favored with an interesting discussion in briefs of counsel and in the written opinion of the district judge concerning the effect of that rule on the Ordinance of the City of Baton Rouge invoked by the plaintiff. We do not find it necessary however to decide in this case if the rule supersedes the Ordinance as granting Mr. Burden's right of way under the Ordinance he was still not relieved of the duty and necessity of exercising care and caution. He had seen the truck from the moment he was in the middle of the block and could easily have kept his car under control. He observed later what he says himself was merely an "indication" from its movements that he could go on in safety. That, in our opinion, was not enough; he should have made himself surer by either slowing down and not waiting again until he was within the intersection to learn that it was still coming on him and then stepping on his accelerator to try to pass ahead of it. "One is not justified in forcing his position on the right of way street, and, when he tries to beat the car on the less favored street across the intersection and fails, it cannot be said that he is not negligent." General Exchange Insurance Corp. v. Carp et al., La.App., 176 So. 145, 147.
After a careful consideration of the case we reach the same conclusion as did the district judge, that regardless of which of the two drivers had the right of way, they both were negligent and therefore the plaintiff is barred from recovery.
Judgment affirmed.