68 So.2d 143 (1953)
MILLER et al.
v.
ABSHIRE.
No. 3747.
Court of Appeal of Louisiana, First Circuit.
November 13, 1953.
*144 Alex L. Pitcher, Jr., Vanue B. Lacour, A. A. Lenoir, Baton Rouge, for appellant.
Huckabay, Seale, Kelton & Hayes, Alex Wall, Baton Rouge, for appellee.
CAVANAUGH, Judge.
This suit is by the plaintiffs against the defendant to recover damages for personal injuries suffered by the plaintiff, Patricia A. Miller, joined by her husband, Kenneth C. Miller, to recover losses allegedly sustained by the community as a result of the accident when plaintiffs' Buick coach, operated by Patricia A. Miller, and a Studebaker automobile, owned and operated by defendant, Billy R. Abshire, were involved in an intersectional collision at Louisiana Highways Nos. 30 and 168 in the Parish of West Baton Rouge on the outskirts of the town of Port Allen.
The plaintiff, Patricia A. Miller, alleges that she was travelling on May 11, 1952, about 6:50 o'clock P.M., in a northerly direction on Highway 168 at or near the intersection with Louisiana Highway 30 at a speed of approximately 25 miles per hour. She further alleges that the defendant wantonly, recklessly and, grossly negligent in the operation of his vehicle and in violation of the law, failed to stop at the stop sign facing him at the intersection; that, without giving any warning signal whatever, defendant drove his automobile into the path of her oncoming car and without observing the stop sign at the intersection; that at the time the defendant reached the intersection she was proceeding in her automobile approximately 50 feet from the intersection and that she was travelling on a right of way road and assumed that the defendant would observe the traffic regulation which required him to stop; that, in disregard of the regulation, he did not stop; that she did all she could do to avoid the accident and that her automobile collided with defendant's vehicle. She alleges the following specific acts of negligence committed by the defendant:
1. Failure to stop according to the regulation of a stop sign, and in direct violation of the statutes of Louisiana and the general law of the road;
2. Failure to yield the right of way to favored traffic;
3. Failure to make and maintain proper lookout according to general rules of the road and highways and in violation of the statutes of the State of Louisiana;
4. Failure to allow favored and right of way traffic to clear the intersection.
She further alleges that she suffered painful and personal injury and describes the nature and character of her injuries in her petition; that, at the time of the accident, she was employed as an instructor in physical education at Southern University at a salary of $324 per month and that, as a result of the injuries, she was incapacitated to perform the duties of her employment for a period of two weeks. Her husband appears as plaintiff in the suit to recover damages caused to the 1950 Buick coach she was driving at the time of the collision, and also to claim as head of the community the salary he claims his wife lost on account of being unable to follow her profession and for the earnings and the amount expended by the community to pay hospital and medical services required by her on account of the injuries suffered in the accident. The plaintiff, Patricia A. Miller's main demand is for damages in the sum of $11,384 and that of her husband is for $921.52, and, alternatively, if it should be *145 decreed that he was the party to assert a claim for future disability and loss of earnings, he asks for judgment in the amount of $3,434.52.
The defendant's answer is a general denial, except admitting that the accident occurred at the intersection, and a special defense is set out that he stopped at the stop sign erected at the intersection and looked to his right and left and saw no oncoming traffic and proceeded to cross the intersection at a slow rate of speed, and, after he had entered the intersection and proceeded more than half way across it, he heard plaintiff's brakes screeching to his right; then he increased his speed in order to clear the intersection, and had practically preempted the intersection with only the rear portion of his car protruding into the highway. He pleads in the alternative that if he was guilty of any negligence in connection with the accident, the plaintiff was guilty of contributory negligence in driving at a dangerous and excessive rate of speed under the circumstances; in failing to keep a proper lookout, or having her car under control and in failing to yield the right of way to defendant's vehicle after it had preempted the intersection, and that plaintiff was driving in a reckless manner without due regard to the safety of others in the immediate vicinity.
At the conclusion of the testimony, the case was argued by plaintiff and defendant, and the Court, for oral reasons, rejected plaintiffs' demand at their cost and dismissed their suit.
The plaintiffs contend here that the judgment should be reversed for the following reasons:
1. That the defendant was negligent for failing to stop at the intersection stop sign, or, if he did stop, in failing to see plaintiff's automobile approaching on a favored highway.
2. That plaintiff was not negligent in operating her automobile on a favored highway in presuming that defendant, on a disfavored secondary road, would stop at the intersection sign and yield the right of way.
3. That defendant's action in entering the intersection and confronting plaintiff with a sudden emergency was the proximate cause of the accident and that in applying her brakes instead of turning to the left under the circumstances would not constitute negligence on her part to preclude recovery.
On the day of the accident, plaintiff was returning from Whitecastle to the City of Baton Rouge and was travelling alone. The defendant and his wife, and Mr. and Mrs. Smith and an uncle of Mr. Smith had left Baton Rouge and travelled across the Mississippi River bridge to where Highway 71 intersects 168, and he had then turned off on Highway 168 going south toward the scene of the accident, but before reaching there left Highway 168, entered a service road for the purpose of coming back to Baton Rouge by the Port Allen ferry. This service road enters Highway 30 a few feet west of the intersection of Highways 30 and 168. In entering Highway 30 from this service road west of the intersection where the collision occurred, the service road comes to a dead end. Defendant was travelling south, and when he came to this dead end, he stopped or hesitated and made a left turn to get on Highway 30 with the intention of crossing the intersection and going east to the ferry.
The plaintiff testified that when she first saw the defendant she was 50 yards from the intersection and that at that time defendant had hesitated or faltered, which caused her to assume that he was granting and yielding her the right of way to proceed, and that she accelerated her speed in order to go on through the intersection. This testimony was given on direct examination. On cross examination, she stated that she was about 30 or 40 feet from the intersection when she realized that defendant was entering the intersection, and she did not know he was not going to stop and come into her lane of traffic until she was 18 or 20 feet from him, and at that time she slammed on her brakes, but it was too late, and the front of her Buick struck the rear left of defendant's car.
*146 Defendant says that he made the left turn from the service road into Highway 30 and was going east and came to a complete stop at the stop sign and looked both to the right and left and did not observe any oncoming traffic to impede his crossing the intersection, and that he proceeded to put his car in low and proceeded to cross the intersection and was travelling in neutral at a rate of speed of 5 to 8 miles per hour and had practically preempted the intersection when he heard plaintiff's brakes being applied, and that plaintiff's car struck his car with such force that when it came to rest the rear of his car was pointed in a southwesterly direction and that the Buick coach veered to the left and travelled a distance of 30 or 40 feet. The main impact and damage inflicted on the Studebaker was on the right rear door, fender and wheel.
None of the occupants of the Abshire car saw the approaching Buick automobile driven by plaintiff, except Mrs. Abshire. The other occupants of the car, except defendant, did not know whether or not he stopped at the stop sign before entering the intersection and their testimony is of little value at the consideration of this case. Mrs. Abshire was sitting on the right side of the back seat, Mrs. Smith in the middle of the back seat, and her husband was sitting on the left side of the seat with one of their children. An uncle of Mr. Smith was riding in the front seat with the defendant.
Mrs. Abshire, who was sitting on the right of the back seat of the Studebaker automobile her husband was driving, testifies that she did not see the approaching car until it was within 60 feet of them, and that it was being driven at an excessive rate of speed of 60 miles per hour. She did not know whether her husband stopped at the stop sign or not, but in her suit against the public liability insurer of her husband, she claimed he did not stop at the stop sign and did not look to his right or left to observe oncoming traffic. The public liability insurer of plaintiff's car was also made a defendant in that suit, which she had filed in the Baton Rouge Division of Federal Court in that district. In view of her conflicting statements in this connection, the value of her testimony is weakened.
State Highway officers were called and went to the scene of the accident a short time after it happened to make an investigation, and, according to the testimony of this officer who made the investigation and report, the impact between the two cars actually took place in the southeast corner of the intersection and about four feet from the lateral curb of Highway 168 on the east side. The officer making the investigation observed skid marks made by the Buick about six feet from the point of impact. Highway 168 at this particular intersection is 24 feet wide, exclusive of the shoulders, and with the shoulders is approximately 30 feet wide. At the intersection it is straight for at least one mile looking south. Highway 30 is not as wide, but the exact width is not reflected by the record because the officer stated there was no occasion to measure it, but it was an old-type highway. Highway 168 had just been recently constructed and opened to travel.
The plaintiff contends here that the defendant is liable because he did not come to a complete stop at the stop sign at the intersection and properly appraise the traffic situation at that time and permit her to pass in safety; that if defendant did stop and did not see plaintiff approach on the favored highway, then defendant should be held liable and negligent for not seeing what he should have seen. She also contends that the plaintiff's hesitating or pausing at the stop sign was an invitation to her to continue through the intersection.
The defendant contends that although he stopped and did not see the plaintiff approaching the intersection, the plaintiff saw defendant in ample time to avoid the accident if she had used proper care. The plaintiff admits that she assumed that defendant was going to stop when he hesitated or faltered at the stop sign, which indicated to her that defendant intended to yield to her the right of way accorded her by the statute and, for that *147 reason, she accelerated her speed in an attempt to pass through the intersection. It is true that where stop signs erected at intersections on highways create a priority of travel within the intersection where they are placed and ordinarily if the failure to stop and obey the traffic regulation is the proximate cause of the accident, then the person violating the regulation by not stopping will be held responsible; and if he stops and looks and doesn't see that which he should see, he is still liable. The fact that a preference is created by statutes or by signals or stop signs on a highway does not relieve the person travelling on the favored highway from having his car under control and operating it at a reasonable and proper rate of speed while approaching an intersection and while crossing it. We quote the following from Blashfield, 2, Section 1030, page 310:
"The general requirements with reference to speed and control in the operation of automobiles apply to drivers approaching or entering street or highway crossings or intersections; so that irrespective of statute, it is the duty of such a driver in the exercise of ordinary care, on approaching or traversing a street crossing, to operate his car at a rate of speed which is lawful and reasonable under the circumstances and to have it under such control so that he may stop it so as to avoid abstractions or objects crossing his path. The question of what, within this rule, is an improper rate of speed and whether the motorist retained the requisite control of the car being one of fact."
While a motorist travelling on an unfavored street is required to allow the right of way at an intersection where traffic is regulated by signals and stop signs, the motorist in the favored street is required to keep a proper lookout and exercise caution when he apprehends an impending collision and does not keep his car under proper control. Section 1027, Blashfield.
In the case before us, the record shows that the stop sign on Highway 30 at the intersection of Highway 168 approaching from the west, is approximately 10 feet from Highway 168, and it was approximately at this point that plaintiff claims that she saw the defendant stop or momentarily hesitate in the operation of his car, which gave her the impression that he would stop and obey the stop sign and accord her the right to proceed through the intersection. The paved slab on Highway 168 is 24 feet wide, and the impact of the two cars actually took place in the southeast corner of the intersection at about 4 feet from the lateral curb of Highway 168 on the east side. The right front of plaintiff's automobile struck the right rear door, fender and wheel of defendant's car. Defendant's car, in travelling from the stop sign on Highway 30 to the point of impact, would have travelled approximately 30 feet, and during this maneuver, his car was being driven at a rate of approximately 8 to 10 miles per hour. Let us assume that he was travelling 10 miles per hour. It took him at least two seconds to go from the stop sign and travel the 30 feet before the impact took place. The plaintiff claims that she was travelling at the rate of 25 miles per hour and was approximately 150 feet from the intersection when she noticed defendant stop or hesitate at the stop sign and when defendant hesitated, she accelerated her speed. Assuming that plaintiff was travelling at a rate of 30 miles per hour through the intersection, she would, at this rate, have been travelling at least 44 feet per second. If she had been travelling only 30 miles per hour, which would have made her travel at a rate of 44 feet per second, her automobile would have been 88 feet away from the intersection at the time defendant entered into the intersection, at which time if she had been maintaining a proper lookout, she would have apprehended the danger and would have had ample time to have stopped her car and avoided the accident. Blashfield, Vol. 9, Section 6237, page 706.
It is our opinion, under the physical facts and the evidence in this case, that *148 the plaintiff was travelling at a greater rate of speed than 30 miles per hour because she had travelled more than 150 feet from the time she first saw the defendant, while he was only travelling 30 feet, and that the excessive speed at which she was travelling through the intersection and while not keeping a proper lookout was the proximate cause of the accident.
"An automobilist, with knowledge of the location of a stop sign, has the right to rely, when crossing the intersection, on the assumption that any one approaching will observe it, and similarly a traveler on a boulevard or arterial highway has a right to expect an operator of a motor vehicle on an intersecting street to stop before entering thereon, and, with that exception in mind, the operator of the automobile on the favored street stops at the sign. If, however, the driver on the favored street sees, or in the exercise of due care should see, that the other vehicle neglected to make the stop required by law, he may himself be under the duty of stopping to avoid a collision at the crossing, at the risk of having his recovery defeated by reason of his being contributorily negligent.

"The motorist who complies with the requirement of stopping at a right of way street, or stop sign, before entering the intersection, by such compliance obtains the same status and rights that he would have at an unmarked intersection; he has a right to approach carefully and enter the intersection, and other travelers, who at that later time are likewise proceeding toward the intersection, must observe the right of way rule under which the respective travelers must determine who has the right of way." (Emphasis ours). Blashfield, 2, § 1032, p. 333. Burden v. Capitol Stores, 200 La. 329, 4 So.2d 62, 8 So.2d 45; Phares v. Courtney, La. App., 27 So.2d 925; Gauthier v. Fogelman, La.App., 50 So.2d 321.
We do not believe that the emergency rule should be applied here because plaintiff saw defendant's car when she was 150 feet from the intersection when defendant's car was approaching the stop sign and should have seen it again when defendant was entering the intersection and when plaintiff was at least 88 feet from the intersection, if she had been keeping a proper lookout.
We have carefully examined the testimony in this case, and, granting that defendant did not stop at the stop sign and did not see the plaintiff's automobile coming on the favored highway, he had at least passed the center of the intersection and would have made a safe exit, if plaintiff had used proper care in operating her automobile from the time she first observed him 150 feet away when he was approaching the intersection, and even if she had used proper care at the time he was entering the intersection, she was 60 or 70 feet from the point where the impact occurred. In failing to keep a proper lookout and observe the movements of the defendant's car when she saw him approaching the intersection, and after he entered the intersection making no effort to avoid the collision, her negligence at least contributed to the accident.
The record in this case unquestionably does not show any manifest error.
For the reasons assigned, the judgment appealed from is affirmed at the cost of appellants.