81 So.2d 561 (1955)
Willie D. ROBBINS et al., Plaintiffs-Appellants,
v.
Tennis L. MYDLAND et al., Defendants-Appellees.
No. 4038.
Court of Appeal of Louisiana, First Circuit.
June 30, 1955.
*562 Kantrow, Spaht & West, R. L. Kleinpeter, Baton Rouge, for appellants.
Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellees.
TATE, Judge.
As a result of a motor vehicle collision on May 31, 1953, in West Baton Rouge Parish, four separate damage suits were instituted. These suits were consolidated for trial and for consideration on this appeal, although separate decrees will be rendered. All plaintiffs have appealed from judgment after trial dismissing their suits.
All plaintiffs were guest passengers in the two automobiles in the three-vehicle collision involving also a large diesel truck owned by defendant T. L. Mydland, contract carrier for co-defendant, the Great Atlantic & Pacific Tea Company, the operation of which truck was insured under a liability policy issued by the third co-defendant, the Travelers Insurance Company.
At the time of the accident, the 1941 Plymouth sedan involved was owned and driven by Leon Johnson. Three women were riding therein as passengers: Bertha Richardson, in the front seat with Johnson, and plaintiff in companion case 81 So.2d 565; Eddie May Richard, sleeping in the rear seat at the time of the collision, plaintiff in companion case 81 So.2d 565; and Julia Robbins, also asleep in the rear seat, plaintiff in the present suit (together with her husband, Willie D. Robbins, co-plaintiff in his capacity as head of the community). The Chevrolet carry-all (station wagon) involved was being driven by Glyn Phipes, but owned by Irvin G. Eppinett, who was riding therein as passenger at the time of the accident. Eppinett is plaintiff in companion suit 81 So.2d 566. (Neither driver, Phipes or Johnson, instituted suit insofar as the record indicates.)
The Mydland truck involved in the accident was a large 1949 White Diesel Tractor (truck) with semi-trailer of 23-ton capacity fully loaded with groceries. It was being driven by Gaston E. Ballard.
The accident occurred near midnight at or near the intersection of the graveled Mulatto Bend Road with U. S. Highway 71-190 about a mile west of the Mississippi River Bridge. This paved four-lane highway at the place of the accident is divided by a rather wide neutral ground separating the two northern lanes of traffic, which are reserved for west-bound traffic, from the two southern lanes reserved for eastbound traffic. At the site of the accident the highway is broken by a gap or crossing about 50 feet long which lies across from and extends at least partly west from the Mulatto Bend Road. On the Sunday midnight of the accident there were quite a few cars parked on the wide shoulders in the immediate vicinity of the accident since several night clubs and cafes were situated nearby, apparently three on three of the corners at the intersection.
The accident occurred when the Johnson car entered U. S. Highway 1950 on the north from Mulatto Bend Road and was *563 struck by defendants' truck, which was proceeding towards the west, in the lanes reserved for westbound traffic (that is, the northern two lanes). The impact caused the Johnson car to crash into the Eppinett Carry-All, which was parked facing westerly or northwesterly in the gap in the neutral ground waiting to enter the westbound traffic lanes. The various plaintiffs suffered personal injuries of various degrees of severity.
The central issue presented is whether (regardless of any negligence on the part of Johnson) any negligence on the part of the driver of defendants' truck was a proximate cause of the accident and of the injuries suffered by the plaintiff-passengers. Determination of this rests upon how close defendants' truck was to the intersection when the Johnson car entered the highway in front of it, and whether defendants' driver's speed, lookout, and control constituted compliance with the standard of care required of a reasonably prudent driver under the circumstances.
It is admitted by all parties that Johnson stopped his car on the gravelled road before entering the main highway, and also that lights were on both on it and on the oncoming truck. It is undenied that for at least 300' east of the intersection the highway was practically straight and vision was unobstructed. Plaintiffs' witnesses testified the trucks made a racket like the roar of B-36 planes approaching clearly audible from 300 feet away. Testifying for plaintiffs, Leon Johnson and his front seat passenger, plaintiff Richardson, testified that they looked east before entering the highway, did not see or hear the approaching truck(s), and turned onto the highway to go west when they were suddenly struck where, how soon, or by what they do not know of their own knowledge, since they were knocked unconscious. (The rearseat passengers were sleeping and saw nothing of the accident.)
G. E. Ballard, driver of defendants' truck involved in the accident, testified that driving 40-45 m.p.h. on his right (the north or outside) lane, when about 300' from the intersection, he noticed the lights of Johnson's car pull up from the north at the entry of the Mulatto Bend Road onto the paved highway, and he then pulled into his left or inside lane. He stated that when he was from 40-60 feet from the intersection, the Johnson car suddenly pulled straight in front of him, crossing south across the highway. Ballard put on his brakes and attempted to swerve back into the right lane, but the left front fender of his truck struck the left back fender of the Johnson car at about the middle of the two westbound lanes driving it further westward into the parked Eppinett Carry-All. After the impact, Ballard pulled back towards the center of the highway, coming onto the neutral ground about 17' west of the crossing and coming to rest overturned at a point estimated by another witness as 75-100' beyond the intersection.
The District Court accepted Ballard's version of the accident as correct, as corroborated by other evidence, including the physical facts of the accident. State Policeman W. J. Bordelon, who investigated the accident immediately after it occurred, placed the point of impact based on debris and skidmarks as about on the center line of the westbound traffic lanes, where the left front wheels of defendants' truck struck the left rear of the Johnson car. David Dunga, driving another of defendant Mydland's trucks and following driver Ballard from New Orleans to the accident, testified that Ballard had slowed and pulled to the left or inside lane starting at about 300 feet from the intersection, and that immediately before the intersection Ballard had braked and pulled back again to the right when the accident apparently occurred. Dunga had seen the lights of Johnson's car when he (Dunga) was about 500-600 feet from the intersection, but did not see it again until after the accident.
Because Dunga estimated that Johnson had pulled out in front of the preceding Ballard truck when the latter was about 150 feet from the intersection, plaintiffs argue that it corroborates the *564 positive testimony of Eppinett to the same effect. If this were true, of course, Ballard might be negligent by reason of excessive speed or deficient lookout, since the driver entering from the inferior street is entitled to assume that the preferred driver is not maintaining excessive speed which will prevent him from completing his entrance on the highway, Gauthier v. Fogleman, La. App. 1 Cir., 50 So.2d 321; or at any rate, contributorily negligent, since the preferred driver's excessive speed and deficient lookout may contribute to the accident caused also by the other driver entering from the side roads in disregard of the former's right of way, Browne v. Hall, La.App. 1 Cir., 70 So.2d 199; Lewis v. Travelers Insurance Company, La.App. 1 Cir., 55 So. 2d 79; Vidrine v. Fontenot, La.App. 1 Cir., 49 So.2d 428; H. & G. Furniture Co. v. Duhon, La.App. 1 Cir., 46 So.2d 521.
But Dunga also stated he could not accurately estimate from his rear position the distance between the cars when the entry had occurred. Plaintiff's witness Phipes also testified that Johnson entered the highway when defendants' truck was just 50-75 feet away, and although he subsequently estimated it may have been 100 feet or more, we feel the District Court's finding that the Johnson car turned on the highway immediately in front of defendants' truck is supported by this witness' testimony that the truck hit Johnson "as this car turned out on the highway" (Tr-220) and that "he might still have been at a little angle turning, but I would say he had already straightened out" (Tr-223), indicating that the collision occurred immediately subsequent to the entry. To this effect also is plaintiff's Eppinett's testimony that Johnson was struck just 4-5 feet west of the intersection.
Both Eppinett and Phipes testified that Johnson had turned right (west) prior to the accident, as stated by Johnson, rather than had proceeded directly across the highway, as Ballard testified. The effect of this testimony, however, is considerably weakened by the investigating State policeman's positive testimony that at the time of the accident these witnesses informed him that Johnson had proceeded straight across the highway, as well as by the physical evidence contrary to their subsequent version at the trial.
Both Eppinett and Phipes testified that the left rear of Johnson's car was struck by the right side of defendant's truck-trailer. Both further testified that the trucks were approaching a speed of 55-65 m.p.h., apparently racing each other in the two westbound lanes. (Both these witnesses contradict one another, however, as to whether the accident occurred on the right or the left of their car, or on the inside or the outside traffic lane, and also very sharply as to the actions and the relative positions of the oncoming trucks prior to the accident. This of course does not necessarily indicate anything else than that the accuracy of observation and recollection is clouded by the stress of sudden emergency and that the many aspects of a given fact are refracted variously to different eyes and intelligences.) Plaintiffs urge that the accident could have occurred as these two witnesses testify; and although their version is highly improbable physically, yet possibly the trial court could have, accepting their credibility over Ballard's, found this to be a freak accident occurring as described by them. But it did not do so, and the District Court's determination of the credibility of witnesses and of factual issues cannot be disturbed unless manifestly erroneous.
We have perhaps discussed the evidence in too much detail. Suffice it to say, we feel the District Court's factual conclusions to be supported by the evidence. Accordingly, we do not feel that we are faced with a situation where because of defendants' driver's excessive speed he was unable to stop and avoid the accident after he should have first perceived the danger, Miller v. Abshire, La.App. 1 Cir., 68 So. 2d 143. We feel that the sole proximate cause of the accident was Johnson's gross negligence in pulling out on the main highway just 50-75 feet in front of the on-coming truck of defendants, and we feel that the driver thereof on the superior road *565 had the right to assume, especially since Johnson had drawn to a stop, that the Johnson car would accord him the right of way to which he was entitled and would not suddenly and heedlessly dart into his path, McMorris v. Webb, La.App. 1 Cir., 67 So. 2d 146; Trahan v. Lantier, La.App. 1 Cir., 33 So.2d 136; Harrell v. Goodwin, La.App., 32 So.2d 758; Butler v. O'Neal, La.App., 26 So.2d 753. We do not feel defendants' driver's speed would be a proximate cause of the accident because whether going 40 m.p.h. (the lawful rate) or 55-65 m.p.h. (as contended by plaintiffs), he still could not have avoided the accident when Johnson darted out so close in front of him.
For the above and foregoing reasons, the judgment of the District Court herein dismissing plaintiffs' demands is affirmed at their cost. Separate decrees will be rendered in the companion cases.