TATE, Judge.
This is an action by the husband and minor children of Mrs. Zona Demerest for damages occasioned by her accidental death. Appeal is taken from judgment dismissing the suit after trial.
The accident giving rise to this lawsuit occurred on March 13, 1954, at about 5:15 a. m. Mrs. Demerest was killed almost instantly when, driving her Chevrolet, she attempted to cross from her cafe and bar south of U. S. Highway 90 to her home on the north side thereof, just within the eastern corporate limits of the town of Mer-mentau in Acadia Parish.
Her car was struck by a 1952 Pontiac driven by M. L. Blackwell, its operation insured by defendant liability companies.
U. S. Highway 90 is a main traffic thoroughfare, was concrete-surfaced at the time of the accident, and 18-22' in width. At the time of the accident, visibility was very poor, not only due to the early hour, but also to a heavy fog.
Blackwell testified that the speed of his Pontiac automobile was not more than 50 m. p. h.; he is somewhat corroborated by his nephews, the other occupants of his car. Some witnesses testified on behalf of plaintiff that subsequent to the accident Blackwell admitted in public conversation to a speed between 70 and 80 m. p. h.
The District Court, without specifically resolving this conflict as to credibility of the witnesses, simply held that Blackwell’s speed was excessive at the time and place of the accident, but denied recovery to plaintiffs because of their decedent’s contributory negligence in apparently entering the highway from the shoulder into Blackwell’s lane inattentively and without proper observation and regard to his superior right of way.
*261 The legal question thus posed for our resolution is (a) whether assuming excessive speed on the part of Blackwell, nevertheless Mrs. Demerest entered the highway so close to his onset as to have caused the accident, even if Blackwell had been proceeding at a less negligent speed, see, e. g., Robbins v. Mydland, La.App. 1 Cir., 81 So.2d 561; or, on the other hand, (b) whether Mrs. Demerest was justified in entering the highway, as being entitled to anticipate, had she observed Blackwell’s approaching car, that it was approaching at a reasonable speed at which her own transit across the highway could have been safely completed — that is, that she was under no duty to anticipate a negligent or unlawful speed, because of which factor alone she couldn’t safely complete the crossing of the highway, see, e. g., Gauthier v. Fogleman, La.App. 1 Cir., 50 So.2d 321. (To be more precise, the legal question before this appellate body is whether the District Court’s decision that the present factual setting affords an opportunity for application of the former doctrine— (a) — is manifestly erroneous.)
It is undenied that, due to the dark and the heavy fog, it was most difficult by the headlights alone to judge the speed of an approaching car; and of course, the motorist “was not required to wait before attempting to cross until there was no vehicle in sight on the right of way street”, Gauthier v. Fogleman, supra cit. at 50 So. 2d 324, being ordinarily entitled to rely upon the reasonably prudent operation of oncoming cars, Wilson v. Williams, La. App. 1 Cir., 82 So.2d 71, Gauthier case.
At the outset, we are met with appellant’s forceful and ably urged argument that since the lawful speed within the corporate limits of the Town of Mermentau was not more than 25 m. p. h., then Mrs. Demerest was entitled to rely upon Blackwell’s approach at this lawful speed. If so, it is urged, she should recover, whether Blackwell’s speed was 50 or 75 m. p. h.; because, having before the impact crossed half the highway under Blackwell’s actual speed, she could certainly have crossed on to the other half in safety had Blackwell been approaching at the lawful speed, that is, at Lá or i/$ of his actual speed, or at least, Blackwell would have had the last clear chance to have avoided the accident.
The factual setting is that Blackwell was proceeding east towards Crowley from Jennings, somewhat late for work due to an earlier car breakdown. Mrs. Demerest, who had worked at her bar until early in the morning (and also had several “Coke highballs”, it being her birthday), drove her car from the east (or far) end of her bar and out-building, northwesterly across the highway toward her home on the other . side thereof.
According to Amy Romero, her 'waitress who was a passenger in the car, she was struck almost as soon as she entered the highway; Miss Romero had seen the lights of the approaching car, but assumed it was distant enough to permit the car to cross the highway in safety, apparently misjudging its speed. (Almost all witnesses agree that oncoming lights, obscured by fog, seemed small and distant.)
Blackwell and the occupants of the car testified that decedent’s Chevrolet shot out from behind the east end of the Demerest Bar immediately in their path; in the fraction of the second before the accident, he swerved leftward. Miss Romero’s testimony as to the decedent’s speed was that it was very slow.
The physical facts showed that the impact occurred at approximately the center of the highway, between the right front of the Blackwell vehicle and the left side (about at the front wheel and door) of the Demerest vehicle. Both vehicles ended on the north side of the highway, the Blackwell Pontiac 60-75 feet from the impact, and the Demerest Chevrolet' about 225 feet from the point of impact. (One of defendants’ passengers saw the Chevrolet backing or rolling slowly after the *262 impact, which defendants urge as the reason — rather than, any tremendous blow— for the Chevrolet’s distance afterwards from the point of impact.) The Pontiac made skidmarks showing application of the brakes 4' before the point of impact, and 9' afterwards (until they left the pavement) .
The Demerest cafe and bar was set 21 feet from the south edge of the highway, by measurement of defendants’ adjuster, corroborated by photographs showing the relative width of a parked automobile. (Another witness, Landry, admitted that his estimate of a SO-foot parking space between the cafe building and the highway was not based on measurement and was just a guess, Tr. 92, 97.)
Translated into time elapsed, Mrs. Dem-erest was struck less than a second after she entered the highway. Even at a speed of 10 m. p. h. (14.6' per second), as estimated by her counsel based on her passenger’s testimony of very slow speed, approximately from six-tenths to three-quarters of a second elapsed for her to come to the center line of this 18-22 foot highway. Thus, if Blackwell was approaching at a speed of SO m. p. h. (74' per second), the Demerest car entered the highway when Blackwell was from 45.6' (%oth of 74') to 55' Q4th of 74') away; or if he was speeding 70 m. p. h. (103' per second), the other car entered the highway when he was from 62' to 77' distant therefrom.
Thus, at the approximate distance Blackwell actually was from Mrs. Demerest (assuming her speed to be only 10 m. p. h.) when she entered the highway — i. e., from 45.6' to 77' — ; had she observed him and assumed his approach at the statutory maximum speed of 25 m. p. h. (36.5' per second) ; nevertheless she entered the highway when, even approaching at the legal speed, Blackwell would have been only from 1.3 to 2.1 seconds distant therefrom. While perhaps under the most favorable calculations her car would have cleared the path of the Blackwell car on the highway before it arrived, such sudden obstruction of the path could without manifest error be found to be a contributory proximate cause of any damages sustained through such sudden entry or the sudden energency created thereby.
While wc are not prepared to say that, had the District Court found existing the extreme limits favoring plaintiff of the respective speeds, its factual determination that defendants’ excessive speed was the sole proximate cause of the accident would have been manifestly erroneous; we certainly do not believe its determination manifestly erroneous that Mrs. Dem-erest’s entry onto the main highway, so close in time and space in front of defendants’ vehicle, was a contributing proximate cause of this tragic occurrence.
For instance, the above discussion has assumed a speed of 10 m. p. h. on decedent’s part, discounting defendants’ witnesses testimony that she shot out from behind the cafe building, which latter testimony would indicate her entry into Blackwell’s immediate path when he was even closer to her. The heavy fog, while decreasing her ability to judge the speed of approaching traffic, may have increased her duty of lookout before entering the highway, in order to comply with her statutory duty to “yield the right of way to all vehicles approaching on the public highway” before she entered it from her private driveway, LSA-R.S. 32:237, subd. E. The lower speed of 50 m. p. h. on the part of Blackwell, per the testimony of the occupants of his car, would indicate an entry by Mrs. Demerest closer to his onset than the speed of 70 m. p. h. he allegedly admitted to bystanders (although the State police report based on his statement to them at the same time shows a lower speed). Determinations by the District Court unfavorable to the plaintiff on such questions find much support in the record so as not to be manifestly erroneous (although neither would its contrary determinations thereupon).
*263 The truth of the matter is that the speeds of the vehicles, the point of impact, the distances the motorists were therefrom at various split-seconds before the accident, can never be known with mathematical precision. Courts’ deductions are based on the testimony of witnesses who can, being human, only imperfectly perceive and imperfectly recollect the events surrounding a split-second of tragedy when, as here, one living human being, a hard-working lady and mother, was dashed to her death, and the chief witnesses themselves were in grave danger of mangling. And yet determination of the relative rights and duties of the parties depends to some extent upon determinations translated in the last analysis, within limits, into seconds and feet distant. The trial court, seeing and hearing the witnesses, is in a better position than his appellate brethren (who can only read the typewritten record) to judge which witnesses are more apt to be more accurate in their testimony; and for this reason, his determination on factual matters based upon witnesses who have testified before him, must be accepted on appellate review unless such determinations are manifestly erroneous. And thus, while we believe that the record could probably as plaintiff ably urges be construed to support a recovery in favor of plaintiff, we cannot hold that the District Court committed manifest error by holding to the contrary.
Plaintiff’s alternative argument that Blackwell had the last clear chance to avoid the accident is based upon an assumption that Blackwell had the duty and the opportunity to observe Mrs. Demer-est’s approach towards and onto the highway across the 21-foot parking strip in front of her cafe. Had he observed her before her actual entry onto the highway, the lower her speed the more reasonable his assumption that she would stop before entering the highway and yield to his superior right of way, the faster her speed the less opportunity he had to observe or to take preventive action. We do not think this argument to be realistic viewed in the context of the second or so within which the alleged negligent acts of both parties occurred.
For the above and foregoing reasons, the judgment of the District Court dismissing plaintiff’s suit is affirmed.
Affirmed.