82 So.2d 71 (1955)
Charles William WILSON et al., Plaintiffs-Appellees,
v.
Dempsey D. WILLIAMS et al., Defendants-Appellants.
No. 4051.
Court of Appeal of Louisiana, First Circuit.
June 30, 1955.
Rehearing Denied September 15, 1955.
Writ of Certiorari Denied November 7, 1955.
*72 Huckabay, Seale, Kelton & Hayes, Baton Rouge, for appellants.
*73 Durrett & Hardin, Baton Rouge, for appellees.
TATE, Judge.
This damage suit arises from an intersectional collision on May 9, 1953, in the City of Baton Rouge. A Mercury car driven by a minor son of defendant Williams, and insured when operated at the time of the accident by his codefendant liability insurer, was involved in a collision with a Nash Station Wagon driven by Linda Wilson, a then-unemancipated minor, 20 years of age, daughter of plaintiff Charles W. Wilson herein, accompanied by her three younger sisters and brother: Mary, almost 17; Charles III, 12; and Rebecca, 5½.
The present suit claims damages for Miss Linda Wilson's personal injuries and for Mr. Wilson's medical expenses on behalf of his children, and his destroyed automobile. The companion suit, 82 So. 2d 77, was instituted by Mr. Wilson on behalf of the three younger children to recover for them damages for their personal injuries.
These two suits were consolidated for trial, and judgment in each case was rendered in favor of all plaintiffs. Defendants' appeals from said judgments were consolidated for argument before this court, and this opinion will treat of all issues relevant to both suits. A separate decree for the companion suit will be rendered hereinafter.
Immediately before the accident between 7:30 and 8:00 p.m. after dark, defendants' Mercury was going west on Capitol Heights Avenue towards its intersection with Steele Boulevard, upon which plaintiffs' Nash Station Wagon was proceeding north toward the same intersection. Both streets were blacktopped, 16 feet wide. Capitol Heights Avenue had the right of way; a stop sign was erected facing traffic approaching the Avenue on Steele Boulevard. The statutory maximum speed limit in Baton Rouge at this site was 25 m.p.h.
There is a very wide difference in the versions of the accident as related by the occupants of the Wilson Nash and by Claude Williams, driver of defendants' Mercury.
Claude, 17 years of age, testified that he approached the intersection at a speed of 25 m.p.h. and when at a distance of 30-50 feet from the corner he observed the Wilson Nash approaching on Steele Boulevard. He immediately applied his brakes, which caught 20' before the impact, but nevertheless the Wilson Nash's front struck his left fender, causing the wreck. According to young Williams, the Wilson Nash ran the stop sign facing it on Steele Boulevard at a speed of 25 m.p.h.
Most favorably construed to defendants, this testimony would absolve their driver of any negligence whatsoever contributing to the accident, since being on the superior street he was under no duty to expect the other car to neglect its statutory duty and his right of way and to proceed immediately into his path, McMorris v. Webb, La.App., 1 Cir., 67 So.2d 146; Trahan v. Lantier, La.App., 1 Cir., 33 So.2d 139. Thus the sole and proximate cause of the accident would be the failure of the driver entering the right of way street from the inferior one to come to a full stop and observe the oncoming driver on the preferred street and afford him his right of way, White v. Glass, La.App., 78 So.2d 57, Anderson v. Morgan City Canning Company, La.App., 73 So.2d 196.
The District Court, however, did not accept this version of the accident. It accepted instead the testimony of the driver of the Wilson Nash, Miss Linda Wilson, 20 years of age at the time of the accident, and an LSU student.
Miss Wilson testified she was driving the other Wilson children from their home one block away for some ice cream. She testified that she put her foot on the brake and slowed as she drove up to the stop sign, shifting into second gear. Observing no traffic coming from either direction on *74 Capitol Heights Avenue, she shifted into first gear and started slowly across the Avenue. When past the middle of the Avenue, her Nash was struck. Her two sisters were badly hurt in the accident, and Miss Wilson herself was distraught and terribly upset; she was unable to recall what happened after the impact. Miss Wilson testified that while she did not come to a complete stop before entering the intersection, she had slowed so as to be barely moving (2-3 m.p.h.) and had barely started when she was struck.
Mary Scott Wilson, almost 17 years old at the time of the accident, corroborated her sister's story. She had been sitting in the front seat, middle, next to her driver. She, however, had looked right just before the impact and had seen the defendants' Mercury approaching very fast just 25 feet away when their own Nash was out in the middle of the intersection. To the same effect was the testimony of her brother, Charles "Bill" Wilson, 12 years old at the time of the accident, sitting in one of the back seats, who said the right front fender of their Nash was struck by the left front fender of the Mercury. He said the Nash was pushed down Capitol Heights Avenue and westward and was spun around 1½ times by the impact.
Although the able District Court rendered no written reasons for judgment, it is apparent that it must have found the sole proximate cause of the accident so excessive a speed on the part of defendants' driver as not only to constitute primary negligence on his part; but as to entitle the plaintiffs' driver to enter the superior thoroughfare, since she was entitled to assume had she observed him at his distance that he was not proceeding at such an excessive speed as to arrive at the intersection much sooner than she would have reasonably anticipated based upon his approaching at the legal rate, Duke v. Malone, La.App., 1 Cir., 57 So.2d 711; Gauthier v. Fogleman, La.App., 1 Cir., 50 So.2d 321. Furthermore, her failure to see the oncoming traffic would not be a proximate cause of any accident, because even if she had seen it, under the circumstances she was entitled to proceed into the intersection, Duke v. Malone, La.App., 1 Cir., 57 So.2d 711; Boullion v. Bonin, La.App., 1 Cir., 2 So.2d 535.
It would appear that the Wilsons' recovery would be further justified on the ground that the Wilson vehicle had preempted the intersection, since is had entered it with the opportunity of clearing the same without obstruction by young Williams had he been proceeding at a reasonable speed. As was stated in McClenaghan v. United States Fidelity & Guaranty Co., La.App., 79 So.2d 373, where recovery was allowed under very similar facts and circumstances:
"These cases re-affirm the well established legal principle that preemption of an intersection does not mean a prior entry of a vehicle simply by a matter of a few feet or in the relation to the time element by a fraction of a second ahead of another vehicle, but preemption must be construed to mean an entry into an intersection with the opportunity of clearing the same without obstruction of the path of another vehicle under normal and reasonable circumstances and conditions. Furthermore, where the intersection involves the passage across a favored thoroughfare, an obligation of exercising unusual care and caution rests upon the driver on the less favored thoroughfare and should be enforced. Those cases mentioned above as favorable to defendant's position hold the motorist should be denied his claim to preemption where he does not enter the intersection sufficiently far in advance of the other vehicle to warrant a reasonable belief that the crossing could be made without impeding traffic on the favored street. The rule does not require that every vehicle involved in a collision with another moving on a favored street shall be denied recovery, nor does it mean that the vehicle on the favored street involved in an accident shall under all circumstances be absolved from wrong. The obligation *75 rests upon the motorist traveling on a favored street to so operate his automobile as to comply with all provisions of traffic regulations and in a prudent manner, having due respect for the rights of and conditions governing other motorists who may happen to be crossing the right of way street." 79 So.2d 375-376. (Italics ours.)
We must accept the trial court's factual findings if not manifestly erroneous. We believe supported by the evidence its factual finding of excessive and reckless speed on the part of defendants' driver, a high school boy on his way that Saturday night at 7:30-8:00 p.m. to a girl friend's house (to meet a boy friend, he said).
Young Williams testified that the right front of the Wilson Nash (proceeding north) hit the left front of his Mercury which was proceeding west, both cars going 25-30 m.p.h. Yet it is completely undenied that both cars came to rest after the collision on Capitol Heights Avenue west of the point of impact; the Mercury 63 feet west of the impact; the Wilson Nash 44 feet west of the impact, and turned completely back around and facing cast! Further, the heavier Nash was a total loss after being struck by the lighter Mercury.
It would appear that if the accident had happened as Williams thought, with two cars of equal speed meeting, his car would not have continued due west for that distance, nor would the Nash have totally changed direction. Defendants' Mercury must have struck plaintiffs' Nash with tremendous force to have moved it 45' to the west and itself not come to rest until 63' after the impact. Using the stopping distance table set forth in Blashfield's Cyclopedia of Automobile Law and Practice, Section 9237, Volume 9C, page 413, it appears that at 30 m.p.h., an automobile of average braking efficiency should stop in 40 feet from the time the brakes are applied; and at 40 m.p.h., in 71 feet from time brakes are applied. It is undisputed, from young Williams' own testimony and the skidmarks made, that his brakes had caught at least 16' before the impact; thus his car travelled at least 79' after the brakes were applied, even after a collision of such force with the heavy Nash automobile as to totally wreck it. Since even without the collision occurring, if going even only 40 m.p.h., defendants' Mercury should have stopped in approximately 71', it would appear the physical evidence of the collision supports the finding that the car was going greatly in excess of 40 m.p.h. (We realize such tables are useful only as rough general guides, since exact stopping distances depend on the individual efficiency of the brakes and the condition of the stopping surfaces, etc.)
Like the trial court we are not inclined to hold Miss Linda Wilson's observations following the accident that she was at fault as an admission of liability, in view of the evidence that she was distraught over the accident and the seriousness of the injuries to her two sisters, one thought dead and the other dying, and in view of the testimony that she was "obviously dazed and not rational" after the accident and when these statement were allegedly made.
The differences of opinion as to whether the right front or the right side of the Nash received the most severe damage are immaterial to this discussion, since certainly this conflicting testimony as to physical fact does not require any holding contrary to that reached by the District Court.
The strongest physical fact contrary to the factual interpretation of the District Court is the investigating police officer's testimony that the Wilson Nash made skidmarks of 20' leading from south of the stop sign on Steele Boulevard to the point of impact. If these skidmarks were actually made by the Nash (as the policeman was positive they were), Miss Wilson's testimony would be inaccurate, and probably she approached the intersection without maintaining a lookout or at speed too great to stop before entering it. But the District Court saw and heard the Wilson children, and found that the accident occurred as testified by them, and as supported by other physical evidence. While no doubt the policeman sincerely testified as he *76 remembered the facts, it is not impossible that such skidmarks were made earlier by another vehicle entering from behind that blind corner. We do not feel that this physical evidence, impressive as it is, apparently counter to the account of three witnesses, requires us to hold that these three witnesses committed perjury and that the District Court's determination that they were credible witnesses, supported by other and equally impressive physical evidence, was manifestly erroneous. (It should be added, however, that the skidmarks do not show in the several photographs taken at the scene of the accident, immediately thereafter, and before the police investigation was completed; although those made by defendants' car are evident; Tr-177; P-6; P-8. It may be that the District Court concluded for this reason, based also upon his acceptance of the Wilsons' testimony, that the police officer was mistaken as to the existence of such skidmarks allegedly made by the Wilson's Nash.)
The District Court apparently did not accept the testimony of a high school classmate of young Williams. Testifying that he was parked in the left rear seat of a car parked two blocks east of the accident and waiting to turn into Capitol Heights Road, this other young man corroborated his friend's account of the accident. The District Court is much better able than the appellate courts to pass on the credibility of witnesses, and we ourselves notice that the three other occupants of the car, also supposed to be friends of both boys, were not called as witnesses to corroborate this tale.
Taking the record as a whole, we feel the District Court was justified in concluding that a preponderance of the evidence proves that the sole proximate cause of the accident was defendants' driver's reckless and excessive speed down a thoroughfare which admittedly passed many blind corners, including the one at which this accident occurred. We do not feel that any negligence on the part of plaintiffs' driver was a contributory proximate cause of the accident, for even had she seen the lights of defendants' vehicle when she paused and looked before entering the intersection, she would have been justified in entering and pre-empting the intersection, since she could not have known that he was approaching at a rate of speed so excessive of the legal rate that she had a right to assume he was approaching at, as to interfere with her transit of this narrow intersection.
Defendants urge that damages are excessive, and on behalf of one of plaintiffs, Rebecca Wilson, an answer to the appeal is filed urging increase therein to amount demanded. We have examined the record and think neither manifestly insufficient or excessive the amounts awarded by the District Court for bodily injuries, mental and physical pain and suffering, for, as follows:
(a) Mary Scott Wilson, 17 years, awarded $7,500; sustained multiple fairly severe fractures of pelvis, fracture in sacro-iliac region, abrasions and lacerations, in bed under traction for 8 weeks, then on crutches and wheelchair for 8 weeks, not medically discharged until six months after accident;
(b) Rebecca Wilson, 5½ years, awarded $5,000; fracture at base of skull from front to rear, fracture of collarbone, ruptured eardrum, contusion or concussion ("bad bruise") of brain, scalp torn, bruises and contusions all over, suffered convulsions (arms and legs jerking, frothing at mouth, trying to bite her tongue), in very serious doubt of survival for 48 hours;
(c) Linda Ann Wilson, 20 years, awarded $750; laceration of right eyebrow, multiple contusions and brush burns, lacerations on feet and ankles, glass removed from eyebrow;
(d) Charles W. ("Bill") Wilson, III, 12 years, awarded $250; shaken up and extremely upset, developed stiff neck two days after accident.
The two seriously injured Wilson girls recovered without significant residual effect other than slight barely noticeable scars in *77 areas not ordinarily observable and other than medically insignificant slight bone displacement.
The special damages sustained by plaintiff Charles Wilson for medical expenses and the value of his destroyed automobile are not seriously disputed and are supported by the evidence introduced to prove same.
For the reasons above set forth, the judgment of the District Court herein in favor of plaintiffs is affirmed in all respects. Costs to be paid by defendant-appellants.