100 So.2d 537 (1958)
Sidney GUTIERREZ
v.
COLUMBIA CASUALTY CO.
No. 20873.
Court of Appeal of Louisiana, Orleans.
January 6, 1958.
Rehearing Denied March 3, 1958.
Writ of Certiorari Denied April 21, 1958.
Jones, Walker, Waechter, Poitevent & Denegre, Michael J. Molony, Jr., New Orleans, for defendant-appellant.
James Thomas Connor, New Orleans, for plaintiff-appellee.
*538 REGAN, Judge.
Plaintiff Sidney Guierrez, the owner and operator of a 1950 Ford sedan, instituted this suit directly against the defendant, Columbia Casualty Co., the liability insurer of Mrs. Isobel Rogers, wife of Leslie J. Rogers, the operator of her 1954 Ford sedan, endeavoring to recover the sum of $945.93, representing personal and property damages incurred on January 4, 1956, at 6:10 p.m. as the result of a collision between the two vehicles in the fourth lane of the Airline Highway, the situs of which was opposite to a driveway servicing the parking lot of a supermarket and from which Rogers had entered the highway.
Defendant answered and admitted the occurrence of the accident, but denied that Leslie Rogers was guilty of any negligence in the premises and asserted the proximate cause of the accident was plaintiff's fault, and in the alternative defendant pleaded plaintiff's contributory negligence.
From a judgment in favor of plaintiff in the amount of $480.93 for property damages and $224.50 for personal injuries, the defendant has prosecuted this appeal.
The record reveals that the Airline Highway at the situs of the accident consists of an inbound [1] and an outbound[2] roadway, each of which is divided into four traffic lanes, separated by a neutral ground. The collision between plaintiff's automobile and the automobile operated by Leslie Rogers occurred in the left outbound lane of the Airline Highway at an auxiliary crossing through the neutral ground thereof, which is used by a large number of vehicles entering or leaving the driveway which services a parking lot adjacent to Schwegmann's supermarket. There are no streets, as such, at the crossing which traverses the neutral ground, and it is located approximately 100 feet from the intersection of Labarre Road and the Airline Highway. The paved crossing in the Airline Highway neutral ground is about 75 feet wide and directly opposite the driveway located at about the center of the parking lot, which is estimated to be about 50 feet in width.
In Ordinance No. 1085 as amended by No. 2031, the Police Jury of Jefferson Parish designated this section of the Airline Highway as a business district and made it unlawful to operate motor vehicles in excess of thirty miles per hour. However, according to plaintiff's testimony, which stands uncontradicted in the record, the posted speed limit at the point where the accident occurred is forty miles per hour.
Rogers, who was an employee of the Schwegmann supermarket, testified that prior to the accident he drove across the Schwegmann parking lot to the driveway which, as we repeat, was opposite the auxiliary crossing in the neutral ground of the Airline Highway and stopped the vehicle in the driveway in deference to the vehicles moving in the highway away from New Orleans. When the traffic signal at Labarre Road changed to red, those vehicles moving out of the city in the Airline Highway stopped in obedience to this signal light; as a result thereof, three lanes of the Airline Highway contained motor vehicles stopped to his right from the driveway to Labarre Road, and the vehicles approaching in the three traffic lanes from his left likewise stopped as they reached the driveway; thus somewhat of a passageway approximately twelve feet in width was created by virtue of the manner in which the vehicles referred to hereinabove had positioned themselves.
It was then that Rogers, so he testified, slowly moved across the first three lanes of the highway. He asserted that although he carefully looked to his left, to his right and straight ahead, he did not observe plaintiff's automobile approaching from his left in the fourth, or fast, lane, which had remained open. It was Rogers' intention to drive across the neutral ground and turn left *539 toward New Orleans. In any event, when the front section of his automobile entered the fourth lane of the highway, it was struck on the left front wheel and fender; the impact knocked the hood of the automobile onto the neutral ground. Plaintiff's vehicle abruptly stopped at the point of contact.
On the other hand, plaintiff testified that it had been his custom to drive past this section of the Airline Highway at least twice a day in going to and returning from work since the Schwegmann supermarket had opened. On the night of the accident plaintiff was operating his automobile in the fourth traffic lane of the outbound roadway of the highway moving toward Kenner, Louisiana. When his automobile approached the driveway and the crossing in the neutral ground, he observed the red signal light ahead, but as the lane in which he was traveling was free of traffic up to the signal light, he only reduced the speed of his car and planned to continue up to the light. Plaintiff also noticed that the automobiles in the three lanes to his right had stopped or were moving very slowly, but he asserted he never saw the Rogers automobile as it moved out of the Schwegmann parking lot and over the driveway and across three of the traffic lanes of the Airline Highway. His automobile struck the Rogers car the instant it entered the fourth lane thereof, and he said that he saw the front of the Rogers automobile only a split second before the collision occurred, at which time he was traveling at a speed of twenty-five to thirty miles per hour. He was injured as a result of the accident and removed to the Charity Hospital in New Orleans.
By stipulation it was agreed that the reasonable cost of repairing his automobile together with other incidental expenses amounted to $480.53.
The only witness to the accident was E. J. Chauvin, who was operating his automobile in the same traffic lane of the Airline Highway as plaintiff approximately 100 feet behind him. He testified that as they approached the situs of the accident both were traveling about thirty-five to forty miles per hour. Chauvin noticed that other vehicles had stopped in the three lanes of traffic to his right, but the fourth lane in which he and plaintiff were traveling was clear up to the light. The automobiles which had stopped where the driveway enters the Airline left a passageway open for this vehicle which was endeavoring to cross both the highway and the neutral ground in order to execute a left turn in the direction of New Orleans. It was dark, and Chauvin first noticed the Rogers car moving downgrade from the Schwegmann parking lot with its lights burning and enter into the highway; and it was his impression that one of the two vehicles would have to stop in order to avoid a collision; but as neither did, plaintiff's vehicle struck the Rogers car on the left front fender and left front wheel. He concluded by asserting that the Rogers vehicle was thrown approximately twenty-five feet by virtue of the impact and that plaintiff's car stopped at or near the point of impact.
Each of the litigants, as usual, contends that the negligence of the other was the proximate cause of the accident. It is our opinion that the focal point of the case may be resolved by an answer to the question which we believe the foregoing facts have posed for our consideration, and that is upon which of the two operators of the vehicles involved in the accident was the greater degree of care and vigilance imposed.
In a relatively recent case[3] we commented that judicially we are tending more and more toward an appreciation of the truth that, in the last analysis, there are few rules in tort cases that permit of universal application; there are principally standards and degrees for the reason that no one is so gifted with foresight that he or she can anticipate all possible human events and prescribe in advance thereof the proper rule *540 for each. It is a question of degree whether a person is negligent, that is, guilty of conduct likely to cause harm, as distinguished from freedom from negligence, that is due care.
Fortunately, in this case the burden of precisely evaluating the degree or standard of care which each litigant was required to exercise under the facts enumerated hereinabove has, to a great extent, been alleviated by virtue of legislative intervention, which has pronounced that:
"The driver of a vehicle entering a public highway from a private road * * * shall yield the right of way to all vehicles approaching on the public highway." [4]
Of course, the rationale of the foregoing statute may not be interpreted to mean that a motorist may, in the face of imminent danger, simply rely upon the right of way accorded him by law and recklessly drive along the highway with complete abandonment of all caution, but it does mean that a motorist who in the exercise of ordinary care is driving in a public highway should not be held to the same standard or degree of care and vigilance as if no such expression of the legislative intent existed. He has the right therefore to assume, unless danger can be reasonably anticipated or is otherwise imminent, that the promulgated law relating to this rule of the road is understood and will be observed, and he is not required to search in anticipation of other motorists who may, in violation thereof, enter any portion of a public highway from a private road or driveway without being relatively certain that it is safe to do so.
Rogers, when the accident occurred, was endeavoring to traverse a public highway after leaving a private roadway. Obviously his vision was obscured by other parked vehicles, and therefore he did not yield the right of way, in conformity with the mandatory language of the statute, to plaintiff's vehicle which was approaching him in a public highway. Plaintiff likewise was not aware of the presence of Rogers' vehicle, undoubtedly because his vision was likewise obscured by the vehicles parked in the three traffic lanes to his right, which he obviously believed had stopped where they did only in obedience of the red signal light located about 150 feet ahead in the intersection of the Airline Highway and Labarre Road.
Chauvin, who was traveling 100 or more feet behind the plaintiff and who said that he noticed Rogers' vehicle descending from Schwegmann's parking lot into the highway, was certainly in a more advantageous position to make this observation than the plaintiff was since his vision had not yet become obstructed by the vehicles which were stopped in the three lanes to his right.
As a result of Rogers' failure to do what the law prescribed, that is, yield, the collision occurred, and therefore liability must be borne by the insurer of Rogers' vehicle, since the proximate cause of the collision was Rogers' failure to exercise that standard or degree of care which was exacted by the statute.
The speed of plaintiff's vehicle is disputed as being somewhere between twenty-five and forty miles per hour; however, it was not in any event in excess of the posted speed limit, nor do we entertain the opinion that it had any causal connection with the accident. We only refer to the subject for the reason that respective counsel devoted some of their attention to the subject both in brief and oral argument.
Plaintiff, a man fifty-nine years of age, suffered the following injuries as a result of the accident: concussion and abrasions of both legs below the knee and the kneecap itself, a bruised elbow, a swollen thumb, and pains in the chest for about four weeks, and he experienced difficulty in moving about for approximately two weeks. The trial *541 judge awarded therefor $224.50[5], which we believe is a very modest award; however, it apparently satisfied the plaintiff since he failed to answer the appeal.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] For traffic moving generally from Baton Rouge to New Orleans.
[2] For traffic moving generally from New Orleans to Baton Rouge.
[3] Morel v. Franklin Stores Corp., 1957, 91 So.2d 42.
[4] LSA-R.S. 32:237, subd. E.
[5] This amount also included bills for medical services rendered.