113 So.2d 815 (1959)
TRAVELERS INSURANCE COMPANY, Plaintiff-Appellee,
v.
GREAT AMERICAN INDEMNITY COMPANY, Defendant-Appellant.
No. 4865.
Court of Appeal of Louisiana, First Circuit.
June 30, 1959.
Christovich & Kearney, New Orleans, for appellant.
Reid & Macy, Hammond, for appellee.
Before ELLIS, LOTTINGER and TATE, JJ.
ELLIS, Judge.
This is a case involving an intersectional collision which occurred in the city of Hammond, La., in the year 1950 and which lay dormant on the docket of the court after answer filed on March 6, 1951, until trial on January 14, 1959. Judgment was rendered on January 20, 1959 with written reasons *816 assigned in favor of the plaintiff, and the defendant has appealed to this court.
In the early morning of February 20, 1950 A. E. Little was driving a new Studebaker automobile, which was insured by the plaintiff company, in an easterly direction on East Coleman Avenue in the City of Hammond, Louisiana, and Chaney Harvell was operating a highway department truck in a southerly direction on South Cypress Street. There are no traffic controls at the intersection of these two streets and neither has been designated as a right of way street, but as the vehicle of the plaintiff assured was traveling in an easterly direction to the right of the highway commission dump truck, which was traveling south, the former, under the law of this State as set forth in LSA-R.S. 32:237, subd. A, had the right of way. Therein the law provides:
"A. When two vehicles approach or enter an intersection at approximately the same time, the driver approaching from the right shall have the right of way. The driver of any vehicle traveling at an unlawful rate of speed or in an unlawful manner shall forfeit any right of way which he might otherwise have."
In the recent case of Gutierrez v. Columbia Casualty Co., La.App., 100 So.2d 537, 539, the Orleans Circuit with Judge Regan as the organ of the court involving a case under LSA-R.S. 32:237, subd. E, stated:
"In a relatively recent case we commented that judicially we are tending more and more toward an appreciation of the truth that, in the last analysis, there are few rules in tort cases that permit of universal application; there are principally standards and degrees for the reason that no one is so gifted with foresight that he or she can anticipate all possible human events and prescribe in advance thereof the proper rule for each. It is a question of degree whether a person is negligent, that is, guilty of conduct likely to cause harm, as distinguished from freedom from negligence, that is due care.
"Fortunately, in this case the burden of precisely evaluating the degree or standard of care which each litigant was required to exercise under the facts enumerated hereinabove has, to a great extent, been alleviated by virtue of legislative intervention, which has pronounced that:
"`The driver of a vehicle entering a public highway from a private road * * * shall yield the right of way to all vehicles approaching on the public highway.'
"Of course, the rationale of the foregoing statute may not be interpreted to mean that a motorist may, in the face of imminent danger, simply rely upon the right of way accorded him by law and recklessly drive along the highway with complete abandonment of all caution, but it does mean that a motorist who in the exercise of ordinary care is driving in a public highway should not be held to the same standard or degree of care and vigilance as if no such expression of the legislative intent existed. He has the right therefore to assume, unless danger can be reasonably anticipated or is otherwise imminent, that the promulgated law relating to this rule of the road is understood and will be observed, and he is not required to search in anticipation of other motorists who may, in violation thereof, enter any portion of a public highway from a private road or driveway without being relatively certain that it is safe to do so." (Emphasis added.)
In Gautreaux v. Southern Farm Bureau Casualty Co., La.App., 83 So.2d 667, 669, which involved an intersectional collision, we stated:
"In our opinion, the able District Court correctly felt that the motorist on the favored street should be permitted to rely on the existence of a stopsign inhibiting the entrance of traffic from inferior streets; but we feel that the mere fact he failed to see whether the other automobile did or did not stop does not constitute contributory negligence. *817 To bar recovery, the deficient lookout must be a proximate cause of the accident.
"To paraphrase the rule we have stated several times: A motorist crossing an intersection has the right to rely on the assumption that those approaching it will respect a stopsign which the motorist knows is located there, and accordingly he may proceed. If, however, in driving on the favored street he sees, or in the exercise of due care should see, that the other vehicle neglected to make the stop required by law, the motorist may himself be under a duty of stopping if by the exercise of reasonable care on his part the accident could have been avoided at the time he saw or should have seen the other vehicle violating its legal duty to stop before entering the favored thoroughfare. See Blashfield, Cyclopedia of Automobile Law and Practice, (Perm. Edition) Volume 2, Section 1032, pp. 333-334, cited in Miller v. Abshire, La.App. 1 Cir., 68 So.2d 143; Droddy v. Southern Bus Lines, Inc., La.App. 1 Cir., 26 So.2d 761; Termini v. Aetna Life Insurance Co., La.App. 1 Cir., 19 So.2d 286. See also Federal Insurance Co. v. Lepine, La.App. 1 Cir., 55 So.2d 83, where excessive speed on part of driver on main thoroughfare at blind intersection was held not to be proximate cause of accident.
"In the everyday world, ordinarily prudent motorists on the main thoroughfare do not slow before each corner and attempt to peer down the sidestreets, but instead concentrate most of their attention on the path ahead, relying on their legal `right of way'. Legislative provisions for right of way are to facilitate the passage of traffic in this congested twentieth century world. If to accomplish this purpose, and in realization that even observing the path ahead may tax the ordinary motorists' powers of sustained observation, the legislature has relieved the motorist on the right of way street of a duty ordinarily to slow before each intersection (and, consequently, of a duty to take his attention from the path ahead by darting glances each way down the intersecting streets), appellate courts should not supply artificial standards in an unrealistic attempt to allocate damages after an accident has occurred.

* * * * * *
"We do not view defendant's claim to have pre-empted the intersection as well founded since as we have observed only recently, `The right of pre-emption is not accorded the driver who blindly enters a favored street, without regard to oncoming traffic, and then attempts to absolve himself of liability because of the mere fact that he was there first', Sonnier v. United States Fidelity and Guaranty Co., La.App. 1 Cir., 79 So.2d 635, at page 638. Pre-emption means entry into an intersection with the opportunity to clear same without (Under reasonably anticipated conditions) obstructing the passage of approaching vehicles, Wilson v. Williams, La.App. 1 Cir., 82 So. 2d 71."
Again in Commercial Credit Corporation v. Serpas, La.App., 94 So.2d 83, 85, we restated the rule of law as to intersectional collisions as follows:
"Under the situation presented in this case, the petitioner had the right of way over the defendant, who was approaching from his left. We feel that the petitioner had the right to enter the intersection assuming that such persons would respect his superior right. This assumption would prevail unless it is shown that the petitioner knew of the apparent danger or should have known of the apparent danger in time to stop and avoid the accident. The petitioner claims that he looked and saw no one approaching. The mere fact he failed to see whether the other automobile stopped to respect his right of way or did not stop does not necessarily constitute contributory negligence. To bar recovery the deficient lookout must be a proximate cause of the accident. See Gautreaux v. Southern Farm Bureau Casualty Co., La.App., 83 So.2d 667. A motorist crossing an intersection has the right to rely on the assumption that those approaching it will respect *818 his right of way and accordingly he may proceed. If, however, in driving on the favored street he sees, or in the exercise of due care should see, that the other vehicle neglected to make the stop required by law, the motorist may himself be under a duty of stopping if by the exercise of reasonable care on his part the accident could have been avoided. * * *".
See also Lumber Mutual Fire Ins. Co. v. Kemp, La.App., 102 So.2d 248; Guillory v. Frank, La.App., 95 So.2d 197; Varisco v. Taramino, La.App., 101 So.2d 453; Brashears v. Tyson, La.App., 86 So.2d 255; Jacob v. Treas, La.App., 94 So.2d 153; Oswalt v. Transcontinental Ins. Co., La.App., 96 So.2d 233.
Bearing in mind the law as above cited and stated, let us examine the facts. At the date of the trial the driver of the highway commission truck could not be located as he had moved approximately four years previously to the state of Texas. The only two witnesses to the actual collision was the plaintiff who testified by deposition approximately three years after the accident, which was offered in evidence on the trial and the guest passenger or co-employee in the highway commission truck who was sitting on the right hand of the driver. At about 8:15 in the morning the plaintiff crossed the Illinois Central Railroad Company track and proceeded east on Coleman Street at a speed of 10 or 15 miles an hour, estimated by the guest passenger in the Highway truck at 30 or 40 miles per hour, traveling on his right and proper side of the street, as he approached the intersection of Coleman and South Cypress Street. To plaintiff's left, which would be to the right of the highway commission truck, was a vacant lot, at the corner of the intersection, however, there were cars parked along the left side of Coleman or South Cypress or possibly both, the testimony is not too clear, but there were cars parked at one or both locations, to the east and north of the intersection. Plaintiff refers to the cars as "several" parked along the curb "to my left". Plaintiff testified that he looked as he approached the intersection to his left and then to his right and proceeded into the intersection. He saw nothing when he looked, and when he had gotten "about half way across the street, I noticed in the corner of my eye this truck just about to hit me and I attempted to swing to the left to get my back end away from him but his bumper struck my rear left,rear part of the left door and left fender and skidded the entire car, the rear end back around to the right. Hit it from the left and knocked it to the right. The right rear wheel struck the southeast curb of the street and that force is what caused the car to turn over on its top, and it slid on down the street on its top about fifteen feet, and did about a half a turn, spinning about half a turn."
Plaintiff's car was knocked by the force of the blow from the highway truck into the south curb at the southeast corner of the intersection, which caused it to turn over and skid on its top approximately 15 feet in a northeasterly direction along Coleman Street. Plaintiff estimated that he was struck approximately 10 feet north of the south curb of the street and that he was almost across the intersection when the truck struck him. Plaintiff testified that the truck struck him near the rear of his car in the vicinity of the rear fender and wheel, but the guest passenger who testified for the defendant was of the opinion that the truck entered the intersection first and due to the speed of the plaintiff's car, the truck struck the latter near its middle on the left-hand side, however, both witnesses testified that the force of the blow turned the car of plaintiff over and it thereafter skidded down the street. The testimony shows that the car needed a rear spring and two rear wheels and two rear axles, and one of the appraisers stated that it was struck low on the rear, which corroborates the plaintiff's version in this respect.
The co-employee riding in the highway commission truck, testified that they were proceeding in a southerly direction on Cypress *819 Street when they came to the intersection of Coleman Street in the City of Hammond; that they had approached the intersection at 15 miles per hour and did not see the plaintiff's car until they were about to collide with it. He didn't remember any obstructions to his view toward the right but for some unexplainable reason they never saw the plaintiff's car until they struck it. His version was that the plaintiff was going at approximately 40 miles an hour and that although they arrived in the intersection first, due to the plaintiff's speed he passed in front of him and they struck him in the middle of his car rather than the rear. There is a dispute as to how far the truck proceeded down Coleman Street. The plaintiff testified it went about 100 feet and pulled into the curb, whereas the co-employee states that it went approximately 25 feet after the accident. It is shown that this truck was in the medium heavy class with pipes having been built to serve as bumpers across the front and a flat bed on the back.
There is no question as to the negligence of the driver of the highway commission truck. He is charged with seeing what he could and should have seen, and his failure to look becomes the proximate cause of the accident, for had he kept a proper lookout as he approached the intersection he would have seen plaintiff's car, for it was impossible for him to pre-empt the intersection or to even safely enter it without realizing that a collision was unavoidable.
Applying the rule which this court has consistently adhered to in these kind of cases, supra, we find no negligence on the part of the plaintiff as he approached the intersection. Had he seen the truck as he approached the intersection if it was traveling at 15 miles per hour he could have assumed that it would and could honor his superior right. If the truck had been traveling at an excessive speed or at 25 or 30 miles an hour at the time he looked and failed to see it, it would have been further north on Cypress Street, which would have also given plaintiff the right to assume that it could and would honor his right to proceed into the intersection. At the time that the plaintiff discovered the peril or should have discovered the peril because of the negligence of the driver of the highway truck the accident was unavoidable, insofar as he was concerned.
The width of the street was estimated at 40 feet and the plaintiff was struck on the right rear wheel after he had almost crossed the intersection or approximately a distance at least of 20 feet.
We are of the opinion that the sole proximate cause of this collision and damage was the failure on the part of the driver of the highway commission truck to keep a proper lookout and his negligence in entering the intersection from a subordinate street in the face of approaching traffic which, had he looked, he would have realized was going to reach the intersection prior to his truck.
Counsel for the defendant places great stress upon the case of Commercial Credit Corporation v. Morris, La.App., 107 So.2d 563, decided by our brethren of the Second Circuit. We feel that the opinion is in accord with the rules that this court has consistently followed, that for one on a favored street to be convicted of negligence for failure to look only applies where the facts existent at the time he should have looked show that the accident could have been prevented by such motorist, and therefore in such a case and under such facts the failure to look or keep a proper lookout becomes a proximate cause of the accident.
We are firmly of the opinion that plaintiff in this case had the right to assume that traffic approaching on the subordinate street would honor his superior right, and where he was not negligent in his approach to the intersection, that until it is shown that the plaintiff could and should have seen the highway commission truck in time to have prevented the accident, the sole proximate *820 cause was the negligence of the highway commission driver.
Counsel also cites the case of Boudreaux v. Moreau, 73 So.2d 192, 195, in which the Orleans Court of Appeal stated:
"Under the circumstances as we appreciate them, our conclusion is that Boudreaux was negligent either in crossing the intersection without keeping a lookout for approaching cars or in making an illtimed attempt to beat the other car across the intersection."
An examination of the facts of the cited case will reveal that the failure of Boudreaux to keep a proper lookout and see what he should have seen became a proximate cause of the collision, for had he looked he would have seen the Moreau car, discovered the peril and had time to prevent or avoid the collision. In other words, under the facts as revealed in this case plaintiff had the last clear chance. We do not have that under the facts in the case at bar. Furthermore, in the cited case the Court of Appeal thought that plaintiff made an ill-timed attempt to beat the other car across the intersection, which we certainly do not have in the case at bar. In our case, plaintiff looked but did not see the truck for some reason, but even had he seen it at that time, the truck traveling 15 miles an hour was a sufficient distance from the intersection to have slowed down or stopped and the plaintiff had the right to assume or expect that the truck driver would do so. At the time that he should or could have discovered the peril or that the truck was not going to honor his superior right, plaintiff in the case at bar could not possibly have avoided the collision, under the facts. We do not find, but to the contrary, that the defendant preempted the intersection.
The question as to the amount of damages or quantum has been agreed upon should judgment be affirmed.
For the above and foregoing reasons the judgment of the district court is affirmed.