LUTHER E. HALL, Judge pro tern.
This suit was brought by plaintiff, Haslett, against defendant, Hingle, and his insurer to recover damages sustained by plaintiff’s automobile in a collision with Hingle’s automobile at the intersection of the West Bank Expressway and Lafayette Street (also known as State Highway No. 23 or Belle Chasse Highway) in Gretna, Louisiana.
Defendant, Hingle, and his partially subrogated insurer, reconvened for the damages sustained by Hingle’s vehicle.
The District Court gave judgment for plaintiff on the main demand and rejected defendants’ reconventional demand. The defendants prosecute this appeal from that judgment.
*511 The record shows that the West Bánk Expressway is a wide, limited-access thoroughfare, divided by a broad neutral ground. The Expressway is paralleled on each side by a two-way service road. Between each flanking service road and the pavement of the Expressway proper is a wide grassy plot. This Expressway and service road system is well over 300 feet wide, is straight and flat and affords an unobstructed vision of the entire area it covers.
Lafayette Street is an undivided two way hard surfaced street about 30 feet wide which crosses the Expressway at right angles. Lafayette Street runs approximately north and south, the Expressway runs approximately east and west. From the intersection of Lafayette Street with the service roads of the Expressway there is an unobstructed view for a considerable distance in both directions along the expressway itself.
The accident involved in this suit occurred shortly after 11 o’clock in the morning on a clear dry day and both parties therefore had a clear view of the entire area.
Plaintiff was driving on the south or Gulf side of the Expressway proper going east toward Algiers, and defendant was driving on Lafayette Street going south toward Belle Chasse.
The intersection is normally governed by automatic signal lights but on the morning of the accident and for some days prior thereto the lights were not working and wore undergoing repairs by a highway service crew.
While several persons, including the men engaged in repairing the signal lights, were at the scene at the time of the accident and were called as witnesses,. none of them actually saw the collision and we must depend almost entirely on the testimony of the parties themselves.
Plaintiff testified he was driving about 35 miles per hour (well within the speed limit) as he approached the intersection from defendant’s right; that when he was about 150 to 200 feet from the intersection he looked to the left and saw defendant’s car approaching slowly between the service road on the North or river side of the Expressway and the Expressway proper; that he observed the signal lights were not working and slowed down to 25 or 30 miles per hour; that when he was 50 to 75 feet from the intersection he again saw the defendant’s car which at that time was in the neutral ground area of the Expressway; that defendant’s car was moving slowly “and I thought he was going to stop, and I turned my attention to the car that had come to a stop on (my) right hand side (of the Expressway) and I proceeded on. The next thing I knew I was hit”.
Defendant, Hingle, testified that as he approached the intersection he saw a sign placed on that side of the Expressway by the signal light repairmen reading “caution, men working”; that he came to a complete stop at the edge of the river side roadway of the Expressway proper; that he then proceeded across the river side roadway and into the neutral ground at about 15 or 20 miles per hour; that he was watching the men who were working on the signal light located on the neutral ground, trying not to hit them; and that he never saw plaintiff’s car at all until it was immediately in front of him. He testified that he put on his brakes but the left front of his car struck the left rear of plaintiff’s car.
Plaintiff’s car was spun completely around by the impact and came to rest some 50 to 70 feet down the Expressway headed in the opposite direction from that in which he had been travelling. Defendant’s car proceeded across the intersection and collided with a car waiting to enter the intersection.
The District Judge did not assign any written reasons when he rendered judgment but in denying defendant’s application for a rehearing devoted principally to defend *512 ant’s plea of contributory negligence, the District Judge had this to say:
“The decision in this case is based on the provision in the State Highway Act which requires a car under the circumstances of this case to yield the right of way to the car approaching from the right. The plaintiff had a right to expect defendant to remain in a position of safety on the neutral ground and yield the right of way.”
Defendant’s own testimony that he never looked to the right in the direction from which plaintiff was approaching, and that he never saw plaintiff’s car until it was immediately in front of him convicts him of the grossest kind of negligence.
Defendant does not dispute the fact that plaintiff had the right of way under the provisions of LSA-R.S. 32:237(A), but argues that plaintiff’s failure to> keep a constant watch on defendant’s car and his failure to slow down or stop when defendant left the neutral ground constitutes negligence such as to forfeit his right-of-way.
Defendant cites many cases to the effect that the right of way accorded one vehicle over another at an intersection may be forfeited by excessive speed or some other act of negligence. This rule is succinctly expressed in the statute as follows: “The driver of any vehicle traveling at an unlawful rate of speed or in an unlawful manner shall forfeit any right of way which he might otherwise have”. LSA-R.S. 32:237 (A).
However, we find nothing in the facts before us here indicating that plaintiff was driving at an excessive rate of speed or that he otherwise was guilty of any contributory negligence. He had observed defendant in the neutral ground which at this point is 30 feet wide, and, believing that he was slowing to a stop turned his eyes momentarily to the right to observe traffic which might enter the intersection from that direction. In that fraction of time the collision occurred.
We agree with the District Judge that “plaintiff had a right to expect defendant to remain in a position of safety on the neutral ground and yield the right of way”.
“ * * * A motorist having the right of way * * * may properly anticipate that others will respect that right, as a branch of his right to rely on other drivers’ observance of traffic rules and regulations; he approaches the crossing, expecting, and entitled to expect, that such others will recognize his right, and his conduct is to be judged in view of that circumstance. If there is nothing in the situation to warn him of impending danger, he is not negligent in relying on such assumption.” Blash-field Cyclopedia of Automobile Law and Practice, Permanent Edition, Vol. 2, Section 1028.
See also: Nix v. State Farm Mutual Insurance Co., La.App., 94 So.2d 457; Van Dyke v. Waguespack, La.App., 198 So. 425; Baranco v. Cotten, La.App., 98 So.2d 260; Smith v. Hoye, La.App., 115 So.2d 651; Travelers Ins. Co. v. Great American Indemnity Company, La.App., 113 So.2d 815; Gutierrez v. Columbia Casualty Co., La.App., 100 So.2d 537; Gautreaux v. Southern Farm Bureau Casualty Co., La. App., 83 So.2d 667.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.