BARNETTE, Judge.
The plaintiff, a fare-paying passenger on a bus owned and operated by New Orleans Public Service Inc., was injured when suddenly thrown from her seat on the bus as a result of the impact of a collision between the bus and an automobile. Judgment was rendered in her favor in the amount of $1,806.65 against the bus company and James Cecil Owens, the driver of the automobile, in solido. The defendant New Orleans Public Service Inc. appealed, and the plaintiff, Mrs. Planchard, answered the appeal seeking an increase in the award. The defendant Owens did not appeal, and the judgment against him is therefore final.
The accident in question occurred August 21, 1964, at the intersection of St. Claude Avenue and Congress Street in the city of New Orleans. At the point in question, St. Claude Avenue is a divided street with a median separating the lanes of traffic. There is a parking lane adjacent to the curb and two traffic lanes on each side of the median. The median is of sufficient width to provide a neutral zone for traffic on Congress Street at the point of intersection. The bus on which plaintiff was a passenger was proceeding at about 20 miles per hour on St. Claude Avenue toward Canal Street. The defendant Owens was proceeding on Congress Street across St. Claude in the general direction described as from the Mississippi River toward Lake Pontchartrain. Thus he was approaching from the left of the bus. St. Claude is a thoroughfare, and traffic on Congress Street is required to come to a full stop before crossing. Appropriate signs are posted.
. Owens was observed by the bus operator from a distance of about half a block as Owens entered the intersection. After crossing the down-river lanes of St. Claude, Owens came to a stop in the neutral zone. There is no dispute of the facts to this point.
The collision occurred in the traffic lane in which the bus was proceeding. The Owens car was struck on its right side near the rear and knocked around, coming to rest partly in the entrance to a gasoline filling station on the corner. The sudden impact caused plaintiff to be thrown from her seat with resulting injury.
The facts in dispute relate to: (1) the manner in which Owens drove in front of the bus from his position of safety; (2) the distance of the bus from the intersection when Owens attempted to cross in front of the bus; and (3) whether the bus reduced speed or changed its direction as if to pick up passengers on the corner, thus indicating to Owens an intention to stop.
At the conclusion of the trial and arguments, the trial judge dictated into the transcript the following reasons for judgment:
“There are two things which impress me in the trial of the case and which I believe are very crucial to the outcome of the case.
“First of all, the testimony of Mr. Edrington. Edrington testified that he felt the bus slow down and then start off again. He also testified at that time he saw the automobile crossing St. Claude Avenue.
“The bus driver testified he saw the automobile stopped on the neutral ground when he was a half block away, and if that car had started off at the time the bus driver was a half a block away, the automobile would have had a perfect right to go into that street and make that crossing because it would have been safe for him to do so.
*199 “The bus driver apparently did slow his vehicle and may have indicated to Mr. Owens that he was going to stop at this bus stop — because there’s no doubt about it — this is a bus stop. Whether or not any passengers were waiting there or not is contradicted, but he did, according to the Public Sendee’s own witness — and they vouch for his credibility —the bus did slow down, and which would lead any man to believe that the bus was going to stop.
“I don’t believe that the fact that Mr. Owens believed that the bus was going to stop absolves him from all liability, but I do believe that the bus driver, having the automobile under observation for a half block, and slowing down and giving an indication that he was going to stop at the bus stop, and then not stopping but pulling off, certainly convicts him of some negligence sufficient to make him a joint tort-feasor.”
The plaintiff acknowledged that she did not know what happened. Her first knowledge of an emergency was the sudden stopping of the bus. Her only other witness was Dr. William Fisher, whose testimony related only to her injuries and the treatment therefor. She must therefore look to the testimony of the defendants’ witnesses to explain the accident and to determine liability between them.
Other than the bus driver and Mr. Owens, there were only two witnesses, both of whom were bus passengers. One of them was a relatively recent immigrant from Honduras who apparently had some difficulty in giving responsive answers. The substance of his testimony is that when the bus began to stop he looked up and saw the car pass in front of the bus “maybe 10 or 12 feet.” Whether he saw the car while it was in the safety zone cannot be determined with certainty from his conflicting answers, but the conclusion that he did not see it until a moment before the impact is more probable. Except for the testimony that the bus driver did apply brakes before the impact, his testimony is of no value.
The witness Jack Edrington, referred to by the trial judge in his reasons for judgment, testified that the Owens car came out in front of the bus when the bus was about 30 feet from the intersection and that the bus driver made a sudden turn toward the left in an attempt to avoid collision. He also testified that he did see the Owens car stopped in the neutral zone, that the bus was in the “middle lane” (as distinguished from the parking lane next to the curb), and that the bus did not move toward the right from this lane. He saw no passengers waiting at the bus stop, but he did feel the bus slow down before reaching the intersection.
Peter Escarra, the bus driver, from a safe distance saw the Owens car come into St. Claude Avenue and stop in the neutral zone before proceeding across the lane occupied by the bus. He testified that when the bus was within about 20 feet of the intersection Mr. Owens suddenly started to cross in front of the bus. He applied the brakes and made a turn toward the left in an attempt to avoid collision and struck the Owens car on its right side near the rear.
Mr. Owens testified that after stopping in the neutral zone in obedience to the traffic regulations, he looked to his right to observe a traffic signal light at the intersection of St. Claude and Alvar Street, a distance of two blocks. He did not explain satisfactorily his reason for looking at the distant traffic light or what effect its change would have on the traffic at the intersection in question. Pie said something about “[taking] it for granted the bus would pull up at the bus stop and stop.” There is no proof that there were passengers waiting to board the bus at the bus stop, and only Mr. Owens testified that the bus made any motion in that direction, as if to stop.
Apparently the trial judge made no finding of fact that the bus made any movement *200 toward tíie bus stop, but merely slowed down, which he construed as an act which might have given Mr. Owens the impression that he intended to stop, thus pulling him out, so to speak, from his position of safety.
We are fully cognizant of the manifest error rule which is so firmly established as to require no citations of authority. But this is not a case of manifest error in a finding of fact, for we agree with the trial judge in the facts found. We do,. however, find error in the application of the law to the facts found.
It is our opinion that the bus driver was free from negligence. The only fault laid to him by the plaintiff and the codefendant is that he slowed down the bus as he approached the intersection. This slowing down of the bus is explained, to the credit rather than to the discredit of the bus driver. He saw from a safe distance the entry of the Owens car into the intersection. He knew that Owens was required to make a complete stop and that the bus had the right-of-way, but, rather than rely entirely on the assumption that Owens would stop, he slowed the bus in an act of caution until he was certain that Owens would honor his right-of-way. Upon seeing that Owens would and did stop as required, he then proceeded on his forward course. It was not negligence on his part to assume that Owens would remain in his place of safety until after the bus had passed.
In Koob v. Cooperative Cab Co., 213 La. 903, 909-910, 35 So.2d 849, 851 (1948), the Court said:
“* * * The motorist on the right-of-way street, with knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe, the law. See Termini v. Aetna Life Ins. Co. et al., La.App., 19 So.2d 286; Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292; Glen Falls Ins. Co. v. Copeland, La.App., 28 So.2d 145. See also Mayfield v. Crowdus, 38 N.M. 471, 35 P.2d 291; 2 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., sec. 1032, pp. 216, 217.”
We think the facts before us present a much more favorable case for the driver on the favored street than that in the Koob case, because here the bus driver did not rely on the assumption that Owens would stop, but slowed his bus until he was sure Owens had stopped. He had stronger reason to assume that he would remain stopped. Youngblood v. Robison, 239 La. 338, 118 So.2d 431, 2 A.L.R.3d 1 (1960); Haslett v. Hingle, 130 So.2d 510 (La.App. 4th Cir. 1961); Emmco Ins. Co. v. Ferrara, 127 So.2d 48 (La.App. 4th Cir. 1961).
Mr. Owens was grossly negligent when, after stopping, he suddenly started to cross in front of the bus which was approximately 30 feet from the intersection and moving at 20 miles per hour. The negligence of Mr. Owens was the sole proximate cause of the collision of the two vehicles.
The judgment insofar as it runs in favor of the plaintiff, Mrs. Jaunita Planchard, widow of Clifton J. Planchard, against New Orleans Public Service Inc., is reversed; and the judgment is amended so as to provide that there is now judgment in favor of New Orleans Public Service Inc., rejecting plaintiffs demands and dismissing her suit at her costs, and as thus amended and in all other respects the judgment is affirmed. Plaintiff-appellee is cast for the cost of this appeal.
Reversed in part; affirmed in part.